IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM J. McCARTER,

                    Plaintiff,

vs.                                    Case No. 13-2238-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but
cannot, considering their age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one,
the agency will find non-disability unless the claimant can show
that he or she is not working at a "substantial gainful
activity."  At step two, the agency will find non-disability
unless the claimant shows that he or she has a "severe
impairment," which is defined as any "impairment or combination
of impairments which significantly limits [the claimant's]
physical or mental ability to do basic work activities."  At
step three, the agency determines whether the impairment which
enabled the claimant to survive step two is on the list of
impairments presumed severe enough to render one disabled.  If
the claimant's impairment does not meet or equal a listed
impairment, the inquiry proceeds to step four, at which the
agency assesses whether the claimant can do his or her previous
work; unless the claimant shows that he or she cannot perform
their previous work, they are determined not to be disabled.  If
the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On July 26, 2011, administrative law judge (ALJ) William G. Horne issued his decision (R. at 9-17).[1]  Plaintiff alleges that he had been disabled since August 1, 2007 (R. at 9). At step one, the ALJ found that plaintiff did not engage in substantial

---

[1] An earlier ALJ decision was issued on December 15, 2009 (R. at 97-106), but the Appeals Council vacated that decision and remanded the case for further hearing on March 4, 2011 (R. at 116-117).

gainful activity since the application date of October 9, 2007
(R. at 11).  At step two, the ALJ found that plaintiff has the
following severe impairments:  bipolar disorder, right wrist
disorder and substance abuse disorder (R. at 11).  At step
three, the ALJ determined that plaintiff's impairments,
including the substance abuse disorder, meet a listed impairment
(R. at 12).  If the plaintiff stopped the substance use, the ALJ
found that plaintiff would still have severe impairments, but he
would not have an impairment or combination of impairments that
would meet or equal a listed impairment (R. at 12).  After
assessing plaintiff's RFC absent substance use (R. at 13), the
ALJ found at step four that plaintiff has no past relevant work
(R. at 15).  At step five, if plaintiff stopped the substance
use, the ALJ found that plaintiff could still perform a
significant number of jobs in the national economy (R. at 15-
16).  The ALJ concluded that substance use disorder is a
contributing factor material to the determination of disability
because the plaintiff would not be disabled if he stopped the
substance use.  Because the substance use is a contributing
factor material to the determination of disability, the
plaintiff has not been disabled at any time from the application
date through the date of the ALJ decision (R. at 16).

**III.  Did the ALJ err in his RFC findings and in his
hypothetical questions to the vocational expert?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

An ALJ's hypothetical question must include all (and only) those impairments borne out by the evidentiary record. There is no error if the ALJ's hypothetical question adequately reflected the impairments and limitations borne out by the evidentiary record. Newbold v. Colvin, 718 F.3d 1257, 1268 (10th Cir. 2013).

In his RFC and his hypothetical question, the ALJ, among other limitations, limited plaintiff to frequent handling or fingering with the right dominant hand and no repetitive use of the right hand (R. at 13, 85).[2] When asked by the ALJ what jobs

---

[2] The ALJ's hypothetical question, and his RFC findings, also indicate that plaintiff is limited to light work which requires only minimal reaction with co-workers and brief and superficial contact with the general public, routine low

a person with these limitations could perform, the transcript

shows the following conversation:

> A (by VE): Well, I'm looking primarily at,
> which is the difficulty is the no repetitive
> use of the hand looking light work.  I'm
> kind of looking here.  I'm taking repetitive
> to be no more than occasional.
>
> Q (by ALJ):…Let's go back to the Judge's
> prior decision on the hand.  Only frequent
> handling or fingering with the right
> dominant hand.  That's my definition.

(R. at 85-86).  Following that clarification, the VE identified

jobs that plaintiff could perform (R. at 86-87).

Plaintiff takes issue with the ALJ essentially equating no

repetitive use of the right hand with frequent handling or

fingering with the right hand (Doc. 27 at 11).  According to the

Selected Characteristics of Occupations Defined in the Revised

Dictionary of Occupational Titles (SCO) (U.S. Dept. of Labor,

1993 at C-3), "occasionally" involves an activity existing up to

1/3 of the time, "frequently" involves an activity existing from

1/3 to 2/3 of the time, and "constantly" involves an activity or

condition that exists 2/3 or more of the time.  In the case of

Gallegos v. Barnhart, 99 Fed. Appx. 222, 224 (10th Cir. June 2,

2004), a vocational expert (VE) expressly construed "repetitive"

to mean the same thing as "constant," or 2/3 or more of the

time.  Thus, the ALJ's hypothetical of frequent handling and

---

stress work that does not involve significant changes or adaptations, simple unskilled work with an SVP or 1 or 2,
short, simple instructions, and no rigid quotas (R. at 85, 13).

fingering with the right hand and no repetitive use by the right hand is not erroneous, as "no repetitive" use and "frequent" use are synonymous.  The court finds no error by the ALJ in this portion of the RFC and hypothetical question.

Later in the hearing, when the ALJ asked the VE if plaintiff could work if he missed two days per month because of his moods, the VE stated that this limitation would preclude plaintiff from being able to work (R. at 87).  When asked if plaintiff could work if he was off task for 2 hours in an 8 hour workday, the VE again testified that plaintiff could not work with this limitation (R. at 87-88).

However, plaintiff points to no medical testimony or evidence that plaintiff has these limitations.  The ALJ gave great weight to the opinions of Dr. Kravetz (R. at 15), who testified at the hearing regarding plaintiff's impairments and limitations (R. at 80-81).  Dr. Kravetz did not testify that plaintiff had limitations that would result in plaintiff missing two days per month because of his moods, or that he would be off task for 2 hours in an 8 hour workday.

To the extent that these limitations may reflect plaintiff's testimony or statements regarding his limitations, the ALJ found that the medical evidence and the record do not support plaintiff's allegations that he cannot work (R. at 13-15).  The court will not reweigh the evidence or substitute its

judgment for that of the Commissioner.  Hackett v. Barnhart, 395
F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d
903, 905, 908, 909 (10th Cir. 2002).  Although the court will
not reweigh the evidence, the conclusions reached by the ALJ
must be reasonable and consistent with the evidence.  See Glenn
v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must
affirm if, considering the evidence as a whole, there is
sufficient evidence which a reasonable mind might accept as
adequate to support a conclusion).  The court can only review
the sufficiency of the evidence.  Although the evidence may
support a contrary finding, the court cannot displace the
agency's choice between two fairly conflicting views, even
though the court may have justifiably made a different choice
had the matter been before it de novo.  Oldham v. Astrue, 509
F.3d 1254, 1257-1258 (10th Cir. 2007).

     The ALJ could reasonably rely on the opinions of Dr.
Kravetz regarding plaintiff's mental limitations.  In the
absence of any medical opinion evidence that plaintiff would
miss two days per month or would be off task for 2 hours in an 8
hour workday, the ALJ did not err by failing to include these
limitations in his RFC findings for the plaintiff.

     Plaintiff also argues that the RFC findings and
hypothetical question do not reflect limitations in the use of
plaintiff's right hand.  The ALJ found that plaintiff had a

9

right wrist disorder because of surgery for a right wrist
fracture (R. at 11-12), and limited plaintiff to frequent
handling and fingering with the right hand and no repetitive use
of his right hand (R. at 13, 85).  The ALJ also limited
plaintiff to light work (R. at 13, 85).  Light work involves
lifting no more than 20 pounds at a time, with frequent lifting
or carrying of objects weighing up to 10 pounds.  20 C.F.R. §
404.1567(b).

Plaintiff had surgery on October 19, 2007.  A medical note
dated December 4, 2007 indicated that plaintiff is not to push,
pull or lift more than 5 pounds (R. at 512).  However, the ALJ
stated that plaintiff did not allege any significant physical
problems at the hearing on July 7, 2011, and noted no treatment
for any pain or physical symptoms in the record other than the
hospitalization in 2007 (R. at 14).  Plaintiff's representative
at the 2011 hearing only addressed plaintiff's mental illness
(R. at 56-58).  Plaintiff's testimony and the questioning of his
representative at the hearing focused only on plaintiff's mental
impairments and limitations.  There was no mention of any
physical limitations (R. at 58-78).  A disability report filled
out by plaintiff indicated that he could lift 35-40 pounds (R.
at 350).

Six weeks after surgery in 2007, plaintiff was limited to
lifting, pushing or pulling no more than 5 pounds with his right

wrist.  However, plaintiff subsequently indicated that he could lift 35-40 pounds, and at the 2011 hearing he did not testify as to any physical limitations, and his representative did not either question him regarding any limitations, or argue that plaintiff had any physical limitations.  Plaintiff has not pointed to any medical records after 2007 indicating any physical limitations due to the wrist surgery in 2007.  On these facts, the court finds no error in the ALJ's RFC findings limiting plaintiff to light work, with frequent handling and fingering with the right hand, and no repetitive use of the right hand.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 30th day of September 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge